1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    NORTHERN DISTRICT OF CALIFORNIA

8

BERNICE PEOPLES,                           No. C 07-00051 MHP

9
                    Plaintiff,

10                                          **MEMORANDUM & ORDER**

       v.                                   **Re: Defendants' Motions for Summary**
11                                          **Judgment**

COUNTY OF CONTRA COSTA, GUS S.
12   KRAMER in his individual capacity, LORI
     KOCH in her individual capacity, and DOES 1
13   through 15 inclusive,

14                    Defendants.
                                           /
15

16          This employment discrimination action involves several incidents in which plaintiff Bernice

17   Peoples ("Peoples")—an African-American woman who is employed as a tax assessor for defendant

18   Contra Costa County—applied for, but was denied a promotion.  Plaintiff asserts claims of race and

19   gender discrimination under state and federal law against defendants Contra Costa County

20   ("County") and two County employees involved in the promotion decisions—Gus S. Kramer

21   ("Kramer") and Lori Koch ("Koch").  Now before the court are all three defendants' motions for

22   summary judgment.  Having considered the parties' arguments and submissions, and for the reasons

23   stated below, the court enters the following memorandum and order.

24

25   BACKGROUND

26          Plaintiff Bernice Peoples is an African-American woman.  Joint Statement of Undisputed

27   Facts ¶¶ 3–4 (hereinafter "Undisputed Facts").  She is an employee of defendant Contra Costa

28   County.  Id. ¶ 5.  In July 1985, she began working for the County as a Junior Appraiser in the

residential division of the tax assessor's office.  Id.  In 1986, she became an Assistant Appraiser, also in the residential division, and she has held that position ever since.  Id. ¶ 6.  Plaintiff applied for

but was not promoted to Supervising Appraiser in March 2005, and again in January 2006.  Id. ¶¶ 7, 9.  Plaintiff also applied for but was not promoted to Associate Appraiser in May 2005, and again in January 2006.  Id. ¶¶ 8, 10.

The review of candidates for promotion to Associate and Supervising Appraiser in the tax assessor's office includes two parts.  Id. ¶ 11.  First, the County human resources department conducts an outside examination.  Id. ¶ 12.  The human resources department reviews applications and establishes a ranked list based on applicants' scores and seniority.  Id.  Only the top-ranked candidates proceed to the second stage of the selection process which consists of in-house oral interviews conducted by a selection panel of senior members of the tax assessor's office.  Id.  The panel then makes a recommendation to the elected County Assessor who in turn, makes the ultimate promotion decision.  Koch Dec. ¶ 15.

Plaintiff Peoples was interviewed by the selection panel once for each position in 2005.  Id. ¶ 4.  The selection panels for both interviews included three senior members of the tax assessor's office—one of whom is defendant Lori Koch.  Undisputed Facts ¶ 13.  Following these interviews, the selection panels made unanimous promotion recommendations to the elected County Assessor, defendant Gus S. Kramer.  Id. ¶¶ 14–15.  Kramer accepted the recommendations of the interview panel for the positions of Supervising and Associate Appraiser and offered promotions to the recommended candidates.  Id. ¶ 18.  The panel's recommendations did not include plaintiff.  Id. ¶¶ 14–15.  Effective March 2005, two of the selected individuals were promoted to Supervising Appraiser.  One was a white man and one was a white woman.  Id. ¶¶ 19, 26.  Effective May 2005, five of the selected individuals were promoted to Associate Appraiser.  Three were white males, one was an Asian-American male, and one was an African-American male.  Id. ¶¶ 20, 23, 25.

Peoples had a similar experience when she applied for the positions of Supervising and Associate Appraiser again in 2006.  The promotion recommendations of the interview panel were unanimous and did not include plaintiff.  Id. ¶¶ 16–17.  Effective January 2006, two individuals were

2

United States District Court

For the Northern District of California

1   promoted to Supervising Appraiser.  One was a white female and the other was an Asian-American

2   male.  Id. ¶¶ 21, 24, 27.  Also effective January 2006, two individuals were promoted to Associate

3   Appraiser.  One was a white male and the other was a Filipino male.  Id. ¶ 22; Peoples Dec. ¶ 42.

4         In November 2006, plaintiff filed a complaint of discrimination with the California

5   Department of Fair Employment and Housing ("DFEH").  Defs.' Exh. 4.  After the DFEH issued

6   plaintiff a right-to-sue notice, plaintiff filed the complaint in this action on January 4, 2007.  Plaintiff

7   alleges four causes of action.  First, against all defendants, she alleges race discrimination in

8   violation of 42 U.S.C. section 1981.  First Amended Complaint ¶¶ 23–24.  Second, against

9   defendants Kramer and Koch, she alleges race discrimination in violation of 42 U.S.C. section 1983

10   and the Equal Protection Clause of the Fourteenth Amendment.  Id. ¶ 25–27.  Third, against

11   defendant County of Contra Costa, she alleges a custom, policy, and practice of race discrimination

12   in violation of 42 U.S.C. section 1983 and the Equal Protection Clause of the Fourteenth

13   Amendment.  Id. ¶¶ 28–31.  Fourth and finally, against all defendants, she alleges race and gender

14   discrimination in violation the California Fair Employment and Housing Act ("FEHA"), Cal. Govt.

15   Code §§ 12900 et seq.  Id. ¶¶ 32–35.  Plaintiff does not allege claims under Title VII of the Civil

16   Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

17         All three defendants—the County, Kramer, and Koch—now move for summary judgment as

18   to each of plaintiffs' claims.  Under 42 U.S.C. section 1983, a municipality cannot be held

19   vicariously liable for the acts of its employees.  Monell v. Department of Social Services of City of

20   New York, 436 U.S. 658, 691 (1978).  Under Monell, a municipality may be liable only if the

21   alleged constitutional violation was committed pursuant to an official policy, custom or practice.

22   See Gillette v. Delmore, 979 F.2d 1342, 1346–1347 (9th Cir. 1992).  The same custom, policy,

23   practice limitation applies to municipal liability under 42 U.S.C. section 1981.  See Federation of

24   African American Contractors v. Oakland, 96 F.3d 1204, 1214–15 (9th Cir. 1996) (section 1981

25   allows a direct, implied cause of action against state actors, but does not impose respondeat superior

26   liability).  Plaintiff concedes the absence of any evidence of a custom, policy or practice of

27   discrimination.  Accordingly, plaintiff's third cause of action is **DISMISSED** in its entirety and

28   plaintiff's first cause of action is **DISMISSED** insofar as it asserts liability against the County.

**United States District Court**
For the Northern District of California

1    Moreover, although plaintiff opposes defendant County's motion for summary judgment as

2 to the fourth cause of action under FEHA, plaintiff does not oppose defendants Kramer's and Koch's

3 motion for summary judgment as to the FEHA claim.  Under FEHA, individual managers and

4 supervisors are precluded from liability for discrimination, Reno v. Baird, 18 Cal. 4th 640 (1998),

5 and retaliation, Jones v. Lodge at Torrey Pines P'ship, 42 Cal. 4th 1158 (2008).  Accordingly,

6 plaintiff's fourth cause of action, insofar as it alleges individual liability against Kramer and Koch

7 for discrimination, is **DISMISSED**.

8    Plaintiff's remaining claims are as follows.  Against the City, she has a claim under FEHA

9 for race and gender discrimination (fourth cause of action).  Against the individuals Kramer and

10 Koch she has claims under 42 U.S.C. sections 1983 and 1981 for race discrimination (first and

11 second causes of action).  The court addresses these remaining claims below.

12

13 LEGAL STANDARD

14    Summary judgment is proper when the pleadings, discovery and affidavits show that there is

15 "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

16 matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

17 case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

18 genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

19 party.  Id.  The party moving for summary judgment bears the burden of identifying those portions

20 of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material

21 fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party

22 will have the burden of proof at trial, the moving party need only point out "that there is an absence

23 of evidence to support the nonmoving party's case."  Id.

24    Once the moving party meets its initial burden, the nonmoving party must go beyond the

25 pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

26 genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving

27 party's allegations.  Id.; Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994).  The

28 court may not make credibility determinations, and inferences to be drawn from the facts must be

4

1   viewed in the light most favorable to the party opposing the motion.  Masson v. New Yorker

2   Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.  The moving party may "move

3   with or without supporting affidavits for a summary judgment in the party's favor upon all or any

4   part thereof."  Fed. R. Civ. P. 56(a).  "Supporting and opposing affidavits shall be made on personal

5   knowledge, shall set forth such facts as would be admissible in evidence, and shall show

6   affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P.

7   56(e).

8

9   DISCUSSION

10  I.      Administrative Exhaustion under FEHA[1]

11          Under California's Fair Employment and Housing Act ("FEHA"), exhaustion of

12  administrative remedies through the filing of a Department of Fair Employment and Housing

13  ("DFEH") charge is a prerequisite to resort to the courts.  Cal. Govt. Code §§ 12960, 12965(b); see

14  also Okoli v. Lockheed Technical Ops. Co., 36 Cal. App. 4th 1607, 1613 (1995) (citing Martin v.

15  Lockheed Missiles & Space Co., 29 Cal. App. 4th 1718 (1994)); Rodriguez v. Airborne Express,

16  265 F.3d 890, 896 (9th Cir. 2001) ("Exhaustion in this context requires filing a written charge with

17  DFEH within one year of the alleged unlawful employment discrimination, and obtaining notice

18  from DFEH of the right to sue").

19          "The scope of the written administrative charge defines the permissible scope of the

20  subsequent civil action."  Rodriguez, 265 F.3d at 897.  "Allegations in the civil complaint that fall

21  outside of the scope of the administrative charge are barred for failure to exhaust."  Id.  Borrowing

22  from federal standards developed in the context of Title VII of the Civil Rights Act of 1964,

23  California courts have held that where allegations in the complaint are like or reasonably related to

24  charges made to the DFEH, or where the allegations can reasonably be expected to grow out of a

25  DFEH investigation, administrative exhaustion is satisfied.  Okoli, 36 Cal. App. 4th at 1614–1617.

26          In Okoli, the California court quoted as *dicta* a treatise stating, ". . . when the difference

27  between the charge and the complaint is a matter of adding an entirely new basis for the alleged

28  discrimination, [rules established under federal cases do not] sanction the expansion of the

United States District Court
For the Northern District of California

5

complaint. For instance, a complaint alleging *race discrimination* is neither 'like or related to' nor likely to be discovered in a 'reasonable' investigation of a charge of *sex discrimination*." Okoli, 36 Cal. App. 4th at 1615 (quoting 1 Larson, Employment Discrimination (2d ed. 1994) transfer binder, § T49.11(c)(1), p. T-350) (emphasis added). In the same vein, the Ninth Circuit has held that a district court lacked jurisdiction over Title VII claims of race, color and religious discrimination because the administrative complaint to the Equal Employment Opportunity Commission ("EEOC") alleged only sex and national origin discrimination. Shah v. Mt. Zion Hospital & Medical Center, 642 F.2d 268, 271–272 (9th Cir. 1981)[2]; see also, Lowe v. City of Monrovia, 775 F.2d 998, 1004 (9th Cir. 1985) (gender discrimination claims not reasonably related to race discrimination claim).

In this case, the civil complaint alleges a new theory of discrimination not reasonably related to the charges in plaintiff's DFEH complaint. The fourth cause of action for violation of FEHA alleges both race *and gender* discrimination, but Peoples' DFEH complaint charges only race discrimination. Compare Defs.' Exh. 4, DFEH Complaint, with First Amended Complaint ¶¶ 32–35. In the portion of the DFEH complaint indicating "Cause of Discrimination," the only box that is checked is for "Race." The factual allegations are also limited to charges of race discrimination. Peoples alleges that "I believe I was not selected [for promotion] because of my race (African/American)." Nowhere does the DFEH complaint encompass charges of gender (or race-plus-gender) discrimination. The California court in Okoli suggested and the Ninth Circuit held in Shah and Lowe that a claim for gender discrimination is neither like nor reasonably related to a claim for race discrimination. Accordingly, this court concludes that Peoples has failed to exhaust her administrative remedies with respect to her gender discrimination claim under FEHA.

Peoples does not, and cannot, dispute the fact that the DFEH complaint does not charge gender discrimination. Instead, Peoples attempts to overcome her failure to exhaust by relying on materials outside the DFEH complaint. Peoples invites the court to examine the pre-complaint questionnaire she completed as well as the in-take interview notes recorded by DFEH investigators. Peoples Supp. Dec., Exh. B; Price Supp. Dec., Exh P.[3] The Ninth Circuit, however, has refused to consider oral statements conveyed to a DFEH investigator to determine the scope of a reasonable investigation. Rodriguez, 265 F.3d at 897 (citing Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044,

1   1050 (9th Cir. 1987)).  Moreover, a California court has held that neither unverified written nor oral

2   information relayed to DFEH may substitute for a formal administrative charge.  Rodriguez, 265

3   F.3d at 897 (citing Cole v. Antelope Valley Union High Sch. Dist., 47 Cal. App. 4th 1505, 1515

4   (1996)).

5           Peoples states in her brief that the formal charge was prepared by DFEH and the letter from

6   DFEH asking her to sign the charge specifically instructs her not make changes on the charge.  See

7   Price Dec., Exh. N.  The court divines from this passing statement that Peoples believes DFEH did

8   not accurately memorialize the information she conveyed.  The Ninth Circuit has held that "if [the

9   DFEH] charge itself is deficient in recording [plaintiff's] theory of the case due to the negligence of

10  an agency representative who completes the charge form, then the plaintiff may present her pre-

11  complaint questionnaire as evidence that her claim for relief was properly exhausted."  B.K.B. v.

12  Maui Police Dept., 276 F.3d 1091 (9th Cir. 2002); see also Rodriguez, 265 F.3d at 897 (oral

13  statements to the DFEH intake officers do not cure defects in the formal charge, but may provide the

14  basis of an equitable excuse for failure to exhaust).

15          The pre-complaint questionnaire prepared by Peoples herself, like the formal charge

16  subsequently prepared by DFEH, checks only the box for "Race" as the reason plaintiff believes she

17  was discriminated against.  Peoples Supp. Dec., Exh. B, Question 1.  Likewise, when listing

18  witnesses who could provide information regarding her complaint, Peoples indicated that those

19  witnesses could attest to "Racism," "Promotions of Unqualified Caucasians," and "Lack of

20  Promotions for qualified Afro-Americans."  Id. at Question 4.  These responses indicate a theory of

21  discrimination based on race, not gender.

22          However, Peoples also indicated on the questionnaire that the discriminatory treatment she

23  received was a denial of promotion and retaliation based on filing a sexual harassment complaint

24  against defendant Kramer in 2000.  Id. at Question 2.  She explained that Kramer had given her "a

25  Holiday Inn room key" and that other employees had told her that Kramer said she "looked good in

26  her jeans" and was probably "an expensive date."  The intake interview notes mirror the pre-

27  complaint questionnaire with respect to Peoples' complaint of retaliation and failure to promote

28  based on her prior sexual harassment complaint.  Price Supp Dec., Exh. P.  Plaintiff further

United States District Court
For the Northern District of California

7

United States District Court

For the Northern District of California

explained in the questionnaire that with respect to the failure to promote, "every Female in the Residential Appraisal Series were promoted except me.  I am the only Afro-Amer. Female ever employed in this Series."  Peoples Supp. Dec., Exh. B, at Question 3.

Based on the totality of Peoples' communications to the DFEH, the court concludes that while the formal charge does not indicate gender as a basis for discrimination, Peoples complained about gender discrimination to the DFEH.  She told DFEH that she believed she was not promoted in 2005 and 2006 because she had made a previous sexual harassment complaint against Kramer in 2000.  Granted, a claim for sexual harassment is not co-extensive with a claim for gender discrimination, but they are sufficiently similar in that complaining about sexual harassment necessarily implicates unlawful bias on the basis of plaintiffs' gender.  Moreover, the statement that she was the only African-American female ever employed implicates a theory of discrimination based on the combination of her race and gender.  The Ninth Circuit has recognized that African-American women can be a class distinct from African-Americans alone and distinct from women alone.  See Lam v. University of Hawaii, 40 F.3d 1551, 1562 (9th Cir. 1994) ("[W]hen a plaintiff is claiming race *and* sex bias, it is necessary to determine whether the employer discriminates on the basis of the *combination* of factors, not just whether it discriminates against people of the same race or of the same sex").  As a matter of law, the court concludes that there is no genuine issue of material fact that Peoples complained to the DFEH about gender discrimination.  Accordingly, despite the silence of the formal charge with respect to a claim for gender discrimination, Peoples is not barred from asserting such a claim in the present action.

As a final matter, defendants argue that the DFEH complaint alleged only one failure-to-promote incident stemming from plaintiff's application for the Associate Appraiser position in January 2006.  Defendants argue that additional failure-to-promote incidents, other than the one alleged in the DFEH complaint, are therefore barred for failure to exhaust.  However, one incident occurred contemporaneously to that alleged in the DFEH complaint, and the additional two incidents occurred just one year prior.  Moreover, the additional incidents involved identical or related appraiser positions.  The court concludes that these additional failure-to-promote incidents were like or reasonably related to the charges made to DFEH, or could be reasonably expected to grow out of

1   a DFEH investigation.  Plaintiff has exhausted her administrative remedies with respect to all four

2   failure-to-promote incidents alleged in her civil complaint.

3

4   II.      Qualified Immunity as to Defendants Kramer and Koch

5          Qualified immunity shields public officials from individual liability for  civil damages under

6   42 U.S.C. sections 1983 and 1981 so long as their conduct does "not violate clearly established

7   statutory or constitutional rights of which a reasonable person would have known."  Harlow v.

8   Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity "provides ample protection to all but the

9   plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341

10  (1986).  As qualified immunity provides immunity from suit and is not merely a defense to liability,

11  it is important to "resolv[e] immunity questions at the earliest possible stage in litigation."  See

12  Hunter v. Bryant, 502 U.S. 224, 227 (1991).

13         As directed by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), a court

14  considering a claim of qualified immunity must conduct a two-step inquiry.  As a threshold question,

15  the court must determine whether, taken in the light most favorable to the party asserting the injury,

16  the facts alleged show the officer's conduct violated a constitutional right.  Id. at 201.  If no

17  constitutional right has been violated, there is no need for further analysis.  Id.  If a constitutional

18  right has been violated, however, the court must next consider whether this right was so clearly

19  established that a reasonable officer would understand that what he is doing violates that right.  Id. at

20  202.  The second inquiry is particularized, as it occurs in the specific context of the situation

21  confronted by the official.  Id.; see also, Rudebusch v. Hughes, 313 F.3d 506, 514 (9th Cir. 2002).

22         Taking Peoples' allegations in the light most favorable to her, if defendants Kramer and

23  Koch failed to promote her because of her race, there is no question that such facts would constitute

24  a violation of Peoples' constitutional right to equal protection.  The next question, then, is whether

25  the right to equal protection is so clearly established that a reasonable officer would understand that

26  what he is doing violates that right.  In the specific employment context involving evaluation and

27  selection of candidates for promotion, the right to equal protection is clearly established.  A

28  reasonable officer would understand that failing to promote plaintiff on the basis of her race violates

9

1   her constitutional rights.  Accordingly, the court concludes that defendants Kramer and Koch are not

2   entitled to qualified immunity.

3

4   III.   Disparate Treatment

5         "A person suffers disparate treatment in his employment when he or she is singled out and

6   treated less favorably than others similarly situated on account of race."  Cornwell v. Electra Central

7   Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).  In order to prevail on a claim of discrimination

8   based on disparate treatment, a plaintiff must first establish a prima facie case that gives rise to an

9   inference of unlawful discrimination.  If the plaintiff succeeds in establishing a prima facie case, the

10  burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its

11  allegedly discriminatory conduct.  If the defendant provides such a reason, then the burden shifts

12  back to the plaintiff to show that the employer's reason is a pretext for discrimination.  McDonnell

13  Douglas v. Green, 411 U.S. 792, 802–805 (1973); Vasquez v. County of Los Angeles, 349 F.3d 634,

14  640 (9th Cir. 2003).

15        Although the Supreme Court developed the McDonnell Douglas framework in the context of

16  discrimination claims pursuant to Title VII of the Civil Rights Act of 1964, the framework is equally

17  applicable to claims of discrimination based on disparate treatment pursuant to 42 U.S.C. sections

18  1981 and 1983.  Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1180 n.11 (9th Cir. 1998)

19  ("This Court applies the same standards to disparate treatment claims pursuant to Title VII, . . ., and

20  §§ 1981 and 1983").  The McDonnell Douglas burden-shifting framework is also applicable to

21  claims of discrimination pursuant to California law under FEHA.  Guz v. Bechtel Nat. Inc., 24

22  Cal.4th 317, 354 (2000) ("Because of the similarity between state and federal employment

23  discrimination laws, California courts look to pertinent federal precedent when applying our own

24  statutes. . . . In particular, California has adopted the three-stage burden-shifting test established by

25  the United States Supreme Court" in McDonnell Douglas "for trying claims of discrimination . . .

26  based on a theory of disparate treatment").

27        A plaintiff establishes a prima facie case of disparate treatment if she shows that (1) she

28  belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse

United States District Court
For the Northern District of California

1   employment action; and (4) her employer treated her differently than a similarly situated employee

2   who does not belong to the same protected class.  Cornwell, 439 F.3d at 1028 (citing McDonnell

3   Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  "The requisite degree of proof necessary to

4   establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to

5   the level of a preponderance of the evidence." Cordova v. State Farm Ins. Co., 124 F.3d 1145, 1148

6   (9th Cir. 1997).

7        Defendant concedes that Peoples meets the first three prongs of the McDonnell Douglas test.

8   Peoples is an African-American woman and belongs to a protected class.  She was performing her

9   job satisfactorily and was qualified for the positions to which she applied.  Finally, she suffered an

10  adverse employment action because she was denied promotion to those positions.

11       With respect to the fourth prong of the McDonnell Douglas test, plaintiff identifies Ken

12  Chrisman, Param Bhatia, and Paul Choroski as similarly situated applicants who were treated

13  differently because they applied to same positions to which plaintiff applied, but, unlike plaintiff,

14  were actually promoted.  None of these applicants are African-American women.  Indeed, other than

15  Peoples, no other African-American women were in the applicant pool.  Because plaintiff's FEHA

16  claim is premised on a combination of race and gender and the relevant protected class is the class of

17  African-American women, plaintiff has satisfied the fourth prong.

18       Plaintiff's section 1981 and 1983 claims, however, are premised on race alone, and therefore,

19  the relevant protected class is the class of African-Americans.  Defendants argue that because one

20  African-American man, Stan Norman, was promoted to the position of Associate Appraiser in May

21  2005, plaintiff cannot establish her prima facie case because a member within plaintiff's protected

22  class was favorably treated.  The Ninth Circuit, however, has stated that favorable treatment of other

23  members of the protected class does not necessarily defeat plaintiff's claims at trial, and moreover,

24  does not entitle defendant to summary judgment.  See Lam v. University of Hawaii, 40 F.3d 1551,

25  1561–1562 (9th Cir. 1994) (in case brought by Asian woman against university alleging both race

26  and sex bias, favorable treatment of other Asian women did not entitle defendant to summary

27  judgment).[4]  Accordingly, just as plaintiff has satisfied the fourth prong of the McDonnell Douglas

28

test for her FEHA claims, she has also satisfied the fourth prong for her claims under sections 1981 and 1983.

Having determined that plaintiff has established a prima facie case of disparate treatment, the "burden of production, but not persuasion," then shifts to defendants to "articulate a legitimate, non-discriminatory reason" for why plaintiff was not promoted.  See Chuang v. Univ. of Cal. David Bd. of Trustees, 225 F.3d 1115, 1123–24 (9th Cir. 2000).  Defendants have satisfied their burden, explaining that Peoples was not promoted because she had less initiative than other candidates, she did not take on challenging assignments, she had not worked in other non-residential divisions of the tax assessor's office, she had not taken outside courses beyond the minimum needed to maintain professional certifications, and she had not displayed leadership, management skills, and enthusiasm.  See Koch Dec. ¶ 12; Becker Dec. ¶ 8.

Once defendants articulate a legitimate, non-discriminatory reason, the burden then shifts back to plaintiff to show that the offered reason is pretextual.  A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Chuang, 225 F.3d at 1123.  Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both "specific" and "substantial" to create a genuine issue of material fact.  Cornwell, 439 F.3d at 1029.  A plaintiff may not defeat summary judgment merely by denying the credibility of the defendant's proffered reasons for the challenged action, nor may a plaintiff create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted.  Id., 439 F.3d at 1028 n.6.

Here, the court finds that there are genuine issues of material fact as to whether defendants' articulated reason for failing to promote Peoples is non-discriminatory or is in fact pretextual. Plaintiff argues that other candidates were promoted despite having never worked outside the residential division of the tax assessor's office and having never taken on more challenging assignments.  See e.g., Pl.'s Exh. C, Choroski Dep. at 58:6–59:12, 38:10–18; Pl.'s Exh. B, Chrisman Dep. at 29:6–30:3.  Moreover, one successful candidate, Paul Choroski was ranked lower than Peoples in the first round of outside evaluations

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    done by the human resources department, had only 12 years of experience compared to her 21 years,

2    and was trained by Peoples to become an Assistant Appraiser.  Other successful candidates were

3    also ranked lower than Peoples.  See Pl.'s Exhs. M, L.

4        Walt Busenius, one of the interview panel members, testified at his deposition that Peoples

5    was "what I would call a journeyman appraiser, did okay work but did not volunteer for any other

6    assignments, came and did her job but demonstrated nothing to me that should warrant her being

7    promoted to associate, and especially in comparison to other candidates."  Pl.'s Exhs. G1–G2 at

8    100:24–101:4.  Peoples argues that Busenius' characterization of her as lacking in initiative and

9    enthusiasm is belied by his comments from her 2005 performance evaluation where he wrote,

10    "Bernice works hard, is very productive, and is respected by her co-workers and the public.  Bernice

11    has a good rapport with everyone and is a true professional in every way. . . . I agree [with others]

12    that Bernice is capable of work at the Associate level."  Pl.'s Exh. 27.

13        Peoples also offers direct evidence of defendant Kramer's discriminatory intent.  Direct

14    evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions

15    by the employer.  Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, (9th Cir. 2005).  In the

16    spring of 1999, Peoples made a reference to the movie Gone With the Wind, and Kramer responded

17    by saying "No, it isn't because your voice isn't high enough," apparently analogizing Peoples to the

18    Black servant character in the movie.  Peoples Dec. ¶ 29.  Another incident occurred in the summer

19    of 1999 when Peoples was leaving the office and ran into Kramer.  Kramer looked at Peoples in a

20    suggestive way and Peoples said to Kramer, "I don't know what to call you."  Kramer responded,

21    "just don't call me massa," a term apparently used when African-Americans were held as slaves and

22    required to address White men as "massa."  Id. ¶ 30.  Moreover, in the winter of 1999, Kramer told

23    Peoples she looked good in her jeans and that he bet she was an expensive date.  He also handed

24    Peoples a Holiday Inn room key.  Peoples made a complaint against Kramer based on this

25    harassment.  Peoples' Dec. ¶¶ 31–32.  Peoples' union representative James Hicks testified in his

26    deposition that shortly after Peoples filed the complaint, Kramer told him that he would never

27    promote Peoples as long as he was the Assessor.  Pl.'s Exh. A, Hicks Dep. At 28:13–29:25, 57–59.

28

13

**United States District Court**
For the Northern District of California

1    Taken together, plaintiff has come forth with sufficient evidence to create a triable issue of

2 fact as to whether defendants failed to promote her based on unlawful discriminatory reasons, or

3 because of legitimate, non-discriminatory reasons.  Plaintiff has identified specific and sufficiently

4 substantial circumstantial evidence to show that she was indeed qualified for and deserving of the

5 positions to which she applied and that less qualified candidates were promoted over her.  Plaintiff

6 has also identified direct evidence of defendant Kramer's discriminatory intent.  Granted, Kramer's

7 conduct occurred five to six years before the challenged promotion decisions, but viewed in the light

8 most favorable to Peoples, his conduct cannot be considered stray, isolated, or unrelated to the

9 decisional process.  Whether plaintiff's evidence can be credited as believable is for the trier of fact

10 to determine.  Defendants are not entitled to summary judgment as to the merits of the disparate

11 treatment claims under FEHA and sections 1981 and 1983.

12

13 <u>CONCLUSION</u>

14    Defendants' motions for summary judgment are **GRANTED IN PART** and **DENIED IN**

15 **PART**.  The third and first causes of action under 42 U.S.C. sections 1983 and 1981 are

16 **DISMISSED** insofar as they assert liability against the County.  Defendants Kramer and Koch are

17 **DISMISSED** insofar as the fourth cause of action under FEHA alleges individual liability for

18 discrimination and retaliation.  Defendants are not entitled to summary judgment with respect to the

19 remaining causes of action.

20

21    IT IS SO ORDERED.

22

23 Dated: May 27, 2008

24                                                                           MARILYN HALL PATEL
                                                                             United States District Court Judge
25                                                                           Northern District of California

26

27

28

14

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>ENDNOTES</u>

1.      In contrast to FEHA, neither 42 U.S.C. section 1981 nor 42 U.S.C. section 1983 require administrative exhaustion. <u>See</u> 42 U.S.C. §§ 1981, 1983; <u>Metoyer v. Chassman</u>, 504 F.3d 919, 947 n.11 (9th Cir. 2007) (administrative exhaustion not required under 42 U.S.C. section 1981); <u>Patsy v. Board of Regents</u>, 457 U.S. 496, 516 (1982) (administrative exhaustion not required under 42 U.S.C. section 1983).

2.      <u>But see</u>, <u>Sandhu v. Lockheed Missiles & Space Co.</u>, 26 Cal. App. 4th 846, 849, 859 (1994) (plaintiff's claim of national origin discrimination was not barred for failure to exhaust because although administrative charge form checked box for "race" but not "national origin," statement in charge form that plaintiff was discriminated against because he was "Asian" would have reasonably led to investigation encompassing both race and national origin claims); <u>see also</u>, <u>Chaudury v. Telecare Corp.</u>, No. C 99-3189 CAL, 2000 WL 1721075 at *3 n.1 (N.D. Cal. Nov. 12, 2000) (gender discrimination claim not reasonably related to national origin/ancestry discrimination claim, but consistent with <u>Sandhu</u>, finding that statement in administrative charge that plaintiff was discriminated against because of her "national origin, Indian" encompassed both national origin and race claims).

3.      Defendants' motion to strike the supplemental declarations of Price and Peoples and the exhibits attached thereto is **OVERRULED**. While untimely, the submission of the materials was delayed by only one day, and defendants had ample time to respond to the arguments raised in plaintiff's opposition. Moreover, plaintiff filed the supplemental declarations and attached exhibits on the very same day she received them from DFEH.

4.      To the extent that this court's dicta in <u>Tunnel v. Powell</u>, 219 F. Supp. 2d 230, 236 (N.D. Cal. 2002) (Patel, J.), is inconsistent with the Ninth Circuit's decision in <u>Lam</u>, the court disapproves of that dicta.